UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

**D.J.R.R.**,

                               Petitioner,

           – against –

**KENNETH GENALO**, *in his official capacity
as Field Office Director of New York,
Immigration and Customs Enforcement*;
**ANTOINE FRAZIER**, *in his official capacity
as Acting Warden of the Metropolitan Detention
Center*; **TODD LYONS**, *in his official capacity
as Acting Director U.S. Immigrations and
Customs Enforcement*; **MARKWAYNE
MULLIN** *in his official capacity as Secretary of
Homeland Security*; **TODD BLANCHE**, *in his
official capacity as Acting Attorney General*,

                         Respondents.

---------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

26-CV-3124 (AMD)

**ANN M. DONNELLY**, United States District Judge:

On May 21, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained the petitioner, who is currently being held in the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  (ECF No. 1 ¶¶ 2, 14–15.)  The petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 ("Section 2241").  (*Id.*)  The Court grants the petition, as explained below.

## BACKGROUND

The petitioner is a citizen of Nicaragua.  (ECF No. 1 ¶ 15.)  He and his wife fled political persecution in Nicaragua, and he entered the United States on October 19, 2021.  (*Id.* ¶¶ 64–65; ECF No. 9 at 1.)  Agents from Customs and Border Patrol ("CBP") encountered the petitioner, determined he had entered the country unlawfully from Mexico, and arrested him.  (ECF No. 9 at

1; *see also* ECF No. 9-2 at 4.)  The petitioner was issued and served a Notice to Appear ("NTA"), Form I-862, which charged him as inadmissible pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").  (ECF No. 9 at 1–2.)  On October 20, 2021, he was released on recognizance and directed to report to 26 Federal Plaza in Manhattan on November 4, 2021.  (ECF No. 9 at 2; ECF No. 9-3 at 2.)  One of the conditions of his release on recognizance was that he "not violate any local, State, or Federal laws or ordinances."  (ECF No. 9-3 at 2.)

On September 13, 2023, the NYPD arrested the petitioner and charged him with criminal possession of a weapon in the fourth degree, drunk driving, driving without a license, and failing to use headlights.  (ECF No. 9-1 ¶ 8.)  The NYPD arrested the petitioner again on March 3, 2024, for assault in the third degree.  (ECF No. 9 at 2.)  On May 6, 2024, ICE arrested him when he reported to 26 Federal Plaza for a routine check-in, "[d]ue to his criminal charges."  (ECF No. 9 at 2.)  After the petitioner was placed into detained removal proceedings (ECF No. 9 at 2; ECF No. 1 ¶¶ 67–68), he filed an I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") (ECF No. 1 ¶ 68).  On September 3, 2024, an immigration judge ordered the petitioner removed to Nicaragua, but granted him withholding of removal under the INA because he was likely to be persecuted or tortured if he was deported there.  (*Id.* ¶ 69; ECF No. 1-2 at 1, 3.)  On September 13, 2024, the petitioner was released from custody on an Order of Supervision ("OSUP").  (ECF No. 1 ¶ 70.)  One of the conditions of his OSUP was that he "[would] not commit any crimes while on this Order of Supervision."  (ECF No. 1-3 at 3.)

On July 1, 2024, while the petitioner was detained and before he was granted OSUP, ICE officers "received an NYPD Wanted poster from the NYPD 102nd Precinct detective squad

indicating that the NYPD is seeking to locate Petitioner in connection with an assault in the third degree that occurred on March 8, 2024." (ECF No. 9 at 2.) Immigration authorities released him on September 13, 2024 directly to the NYPD, and he was arrested again. (*Id.* at 3; ECF No. 9-1 ¶ 16.) The case was ultimately dismissed. (ECF No. 1 ¶ 72.) On May 23, 2025, the petitioner was arrested for misdemeanor petit larceny. (ECF No. 9 at 3.) He was "not the subject of a custodial arrest and he has not been convicted of any such accusations." (ECF No. 1 ¶ 73.) Indeed, "[t]he allegations were not even charged and resulted in no criminal case being filed." (ECF No. 10 at 6; *see also* ECF No. 10-10 (letter from Queens County District Attorney stating that the petitioner's arrest "was dismissed by this Office prior to Criminal Court arraignment").)

Between May 2025 and May 2026, the petitioner checked in with ICE pursuant to his OSUP. (ECF No. 10 at 6.) When he checked in at 26 Federal Plaza in Manhattan on May 21, 2026, ICE officers served him with a "Notice of Revocation of Release" and arrested him. (ECF No. 1 ¶ 75; ECF No. 9 at 3.) The Notice of Revocation of Release stated that his OSUP had been revoked pursuant to 8 C.F.R. § 241.4(*l*) because he violated a condition of his release by getting arrested on September 13, 2023, September 13, 2024, and March 23, 2025. (ECF No. 9-9 at 3.)[1] In addition, the Notice of Revocation of Release stated that the petitioner was "under review for removal to an alternate country." (*Id.*) At some point that day, an ICE officer did an "informal interview" of the petitioner. (*Id.* at 2; ECF No. 9 at 3.)

The next day, May 22, 2026, the petitioner's counsel filed a petition for habeas relief. (ECF No. 1.) On May 26, 2026, the Court ordered the government to show cause why the petition should not be granted. (*ECF Order dated May 26, 2026.*) The government responded to

---

[1] The petitioner's March 3, 2024 arrest does not appear on his Notice of Revocation of Release. (*See* ECF No. 9-9 at 3.)

the order to show cause on June 3, 2026.  (ECF No. 9.)  The petitioner filed a reply on June 8, 2026.  (ECF No. 10.)

## LEGAL STANDARD

Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention."  *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

### I.      Jurisdiction

As a threshold matter, the government argues that the Court does not have jurisdiction to consider the petition.  First, the government argues that 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) "deprive this Court of jurisdiction to review Petitioner's demand for an order directing Respondents to release him from custody and his underlying contentions of violations of law by ICE" because he has a final order of removal, which "ICE arrested and detained Petitioner for the purpose of enforcing."  (ECF No. 9 at 6.)  Second, the government argues that 8 U.S.C. § 1252(g) "bars *all* claims challenging the execution of a removal order."  (*Id.* at 7.)  The Court addresses these arguments in turn.

Section 1252(a)(5) provides that "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter."  8 U.S.C. § 1252(a)(5).  And

under Section 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove a [noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). This "zipper clause is meant to 'consolidate judicial review of immigration proceedings into one action in the court of appeals.'" *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 223 (2020) (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)). Section 1252, therefore, "clearly preclude[s] the district court's entertaining of a direct challenge to a removal order." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). "[S]ection 1252(a)(5)'s jurisdictional bar applies equally to preclude . . . an indirect challenge." *Id.* at 55. However, "a suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Id.*

The petitioner challenges his detention on the grounds that ICE unlawfully revoked his OSUP. (*See* ECF No. 1 ¶¶ 76–95.) "[C]ourts in this circuit have universally held that [Section 1252(a)(5) and Section 1252(b)(9)] do not apply to petitioners . . . who challenge the lawfulness of their detention following revocation of an OSUP." *Zhang v. Genalo*, 814 F. Supp. 3d 307, 320 (E.D.N.Y. 2025); *see also Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) ("[D]istrict courts in this circuit have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.").

The petitioner also challenges his removal to a third country. (*See* ECF No. 1 ¶¶ 96–114.) Sections 1252(a)(5) and 1252(b)(9) do not bar the Court from hearing these claims, either. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1006 (W.D. Wash. 2019) (rejecting the government's

argument that Section 1252(a)(5) stripped the court of jurisdiction where "[p]etitioner does not challenge the IJ's determination that he is removable or claim any deficiency in the removal order itself. Rather, he challenges DHS's attempts, *outside* of removal proceedings, to designate Somalia without reopening his proceedings so that an IJ could make the designation in the first instance and/or determine whether petitioner's life or freedom would be threatened in that country."); *Ortega v. Kaiser*, No. 25-CV-5259, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) (finding that Section 1252(a)(5) did not bar review of a petitioner's claims where he "d[id] not challenge the validity of his final removal order to El Salvador but instead challenge[d] his removal to a third country *without* a removal order there, or his indefinite detention while the Government seeks a third-country removal order."). The bottom line is that the petitioner is not challenging — directly or indirectly — his final removal order, which authorizes the government to remove him only to Nicaragua. (ECF No. 1-2 at 3.) Instead, he is challenging ICE's revocation of his OSUP and his removal to a third country not listed in his final removal order. Therefore, Sections 1252(a)(5) and 1252(b)(9) do not strip the Court of jurisdiction to adjudicate his habeas petition.

The government cites the Court's decision in *Villatoro v. Shanahan*, No. 26-CV-1210, 2026 WL 948297 (E.D.N.Y. Apr. 7, 2026), for the proposition that "Sections 1252(a)(5) and 1252(b)(9) deprive this Court of jurisdiction to review Petitioner's demand for an order directing Respondents to release him from custody and his underlying contentions of violations of law by ICE." (ECF No. 9 at 6.) But Villatoro had a final order of removal and had not been granted withholding of removal; he was detained pursuant to 28 U.S.C. § 1231 so that he could be removed from the country. *Villatoro*, 2026 WL 948297 at *3. Under those circumstances, the Court held that "[r]eleasing the petitioner from mandatory detention would frustrate the

6

government's ability to enforce the removal order; accordingly, the petitioner is making an indirect challenge to the removal order." *Id.* As explained above, this case is different, and *Villatoro* does not apply.

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Second Circuit has emphasized that Section 1252(g) imposes a "narrow jurisdictional bar." *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025). It "does not preclude jurisdiction over the challenges to the legality of a noncitizen's detention." *Id.* (citation modified). Therefore, courts in this circuit have repeatedly rejected arguments that Section 1252(g) bars district courts from considering cases — like this one — in which a habeas petitioner challenges his ongoing detention on the grounds that ICE did not follow the requisite procedures and processes in revoking his supervision and re-detaining him. *See, e.g., Zhu v. Genalo*, 798 F. Supp. 3d 400, 406–07 (S.D.N.Y. 2025) ("Here, Petitioner's claims are collateral to the Government's decision to execute the final order of removal, and instead involve whether the Government complied with its own revocation procedures and whether the length of his detention after the removal period is constitutional . . . [a]s a result, the Court's jurisdiction is not barred by section 1252(g)."); *Lopez v. Trump*, No. 25-CV-4826, 2025 WL 3274224, at *6–7 (S.D.N.Y. July 10, 2025) (rejecting the government's argument that Section 1252(g) eliminated the court's jurisdiction in a case involving ICE's revocation of OSUP because "Petitioner's detention claim does not challenge ICE's exercise of prosecutorial discretion . . . [i]nstead, Petitioner contests the lawfulness of her continued detention by ICE.")

Nor does Section 1252(g) strip the Court of jurisdiction over the petitioner's challenge to his removal to a third country. The petitioner's final removal order is to Nicaragua. (ECF No. 1-2 at 3.) He does not have a removal order to any other country, including Mexico, where the government says it intends to send him. (*See* ECF No. 9 at 3.) Because the petitioner is not challenging his removal to Nicaragua, Section 1252(g) does not bar the Court from reviewing his claims. *See Ortega*, 2025 WL 2243616, at *3 ("Ortega does not challenge the execution of the final removal order entered against him, which provided for his removal *only to El Salvador* and deferred his removal there in light of his CAT claim. Instead, Ortega challenges his potential detention or removal to a country *other* than El Salvador, for which there currently exists no final removal order. Accordingly, his claims do not challenge the Government's decision or action to execute removal orders, and Section 1252(g) does not bar the Court's review of his claims." (citation modified)).

Accordingly, the Court has jurisdiction to consider the petition.

## II.     Revocation of OSUP and Re-detention

The petitioner argues that ICE violated his right to due process when it re-detained him, without notice or an opportunity to be heard and in violation of ICE regulations. (ECF No. 1 ¶¶ 76–89.) The government argues that the petitioner does not have "a protectible liberty or property interest in maintaining an OSUP, a grace granted to him by ICE." (ECF No. 9 at 11.)[2] "Contrary to the Government's assertions, Petitioner's liberty interests are implicated by his

---

[2] The Court also rejects the government's assertion that "[l]iberty is available to Petitioner, just not liberty *in this country.* He may secure his liberty abroad immediately by withdrawing this suit." (ECF No. 9 at 11.) Longstanding Supreme Court and Second Circuit precedent holds that noncitizens like the petitioner are "entitled to challenge through habeas corpus the legality of their ongoing detention." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 771 (2008)).

redetention even if ICE has discretion to revoke his supervision." *Zhu*, 798 F. Supp. 3d at 408. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). And the Due Process Clause applies equally to "noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Zadvydas*, 533 U.S. at 693). Therefore, as courts in this circuit have held, the petitioner "has a 'procedural right in connection with the decision' by ICE 'to deprive him of liberty,' even where such a detention is committed to ICE's discretion by statute." *Roman-Cruz v. Lyons*, No. 25-CV-10522, 2026 WL 114936, at *2 (S.D.N.Y. Jan. 15, 2026) (quoting *Funes v. Francis*, 810 F. Supp. 3d 472, 498 (S.D.N.Y. 2025)); *see also Funes*, 810 F. Supp. 3d at 498–99 (collecting cases).

"[T]he Supreme Court has long recognized that, where 'the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.'" *Funes*, 810 F. Supp. 3d at 499 (quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)). "The process ICE must follow to revoke an OSUP is set forth in 8 C.F.R. § 241.4(*l*)." *Lyons*, 2026 WL 114936, at *2. The government asserts that the petitioner's OSUP was revoked under Section 241.4(*l*)(2). (ECF No. 9 at 11 n.8.) That section provides:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.

8 C.F.R. § 241.4(*l*)(2). Release "may be" revoked if, "in the opinion of the revoking official:

(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii)

9

It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id.*

Field Office Director Kenneth D. Genalo authorized the Notice of Revocation of Release. (*See* ECF No. 9-9 at 4.) "Courts do not appear to have squarely addressed the issue of whether Field Office Directors are District Directors or whether Field Office Directors have the authority to revoke OSUPs; however, the courts that have reviewed the applicable regulations note that '[i]t is not clear from the regulation, which refers to previous Immigration and Naturalization Service position titles, whether an ICE field office director has authority to revoke an alien.'" *Ndoye v. Joyce*, No. 26-CV-1219, 2026 WL 765635, at *3 (S.D.N.Y. Mar. 17, 2026) (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017)). In any event, even if a Field Office Director is a "district director" within the meaning of the regulation, "he . . . may only [revoke OSUP] 'when, in [his] opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.'" *Id.* at *4 (quoting 8 C.F.R. § 241.4(*l*)(2)). Nothing in the record suggests that Field Officer Genalo ever made this "threshold determination." *Rombot*, 296 F. Supp. 3d at 387. Accordingly, the petitioner's release "was not lawfully revoked, and . . . he is entitled to release on that basis alone." *Ceesay*, 781 F. Supp. 3d at 162; *see also Ndoye*, 2026 WL 765635, at *4–5 (finding, based on Field Officer Genalo's failure to "make a finding prior to detention that revocation of Petitioner's OSUP was in the public interest and the circumstances did not permit referral to the Executive Associate Commissioner," that ICE "disregarded the explicit text of its own regulation and violated Petitioner's due process rights"); *Juarez-Montenegro v. Lyons et al*, No. 26-CV-419, 2026 WL 1501101, at *6 (W.D.N.Y. May 29, 2026) ("Even assuming that acting Field Office

Director Wesling was authorized to revoke Petitioner's OSUP, the government has not alleged that Director Wesling made the findings required by § 241.4(*l*)(2) before revoking Petitioner's OSUP.  Therefore, because no such finding has been made, the agency has violated its own regulations and, in doing so, Petitioner's due process rights." (citation modified)).[3]

Section 241.4(*l*)(1) "identifies the procedures to be followed when a noncitizen has violated a condition of her OSUP."  *Funes*, 810 F. Supp. 3d at 489.  It provides that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.4(*l*)(1).  Acknowledging that Section 241.4(*l*) is "not a model of clarity," *Zhu*, 798 F. Supp. 3d at 410, courts in this circuit have held that "the text of § 241.4(*l*) sets forth a unified set of procedures governing the revocation of release."  *Funes*, 810 F. Supp. 3d at 491.  Therefore, Section 241.4(*l*) "requir[es] an informal interview upon the revocation of release regardless of the reason for the revocation."  *Ceesay*, 781 F. Supp. 3d at 163; *see also Zhu*, 798 F. Supp. 3d at 412 ("[R]edetention under section 241.4 requires notice and an informal interview.").  ICE gave the petitioner the Notice of Revocation of Release the day it re-detained him; the notice listed his arrests in September 2023, September 2024, and March 2025 as the

---

[3] Section 241.4(*l*)(1) also provides that a non-citizen "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody."  8 C.F.R. § 241.4(*l*)(1); *see also E.M.M. v. Almodovar*, No. 25-CV-08212, 2025 WL 3077995, at *5 (S.D.N.Y. Nov. 4, 2025) ("Section 241.4 offers two bases to revoke an OSUP: (1) if the alien violates a condition of the OSUP; or (2) on the authority of the Executive Associate Commissioner or a district director.").  However, because "the text of § 241.4(*l*) sets forth a unified set of procedures governing the revocation of release," *Funes*, 810 F. Supp. 3d at 491, the "procedural requirement" entrusting the discretionary authority to revoke OSUP based on a violation of condition of release only to the Executive Associate Commissioner or a district director applies equally to revocation under Section 224.4(l)(1), *see Ndoye v. Joyce*, No. 25-CV-8856, 2026 WL 306387, at *5 (S.D.N.Y. Feb. 5, 2026).

grounds for the revocation of his OSUP.  (*See* ECF No. 9-9 at 3.)  He also had an informal interview.  (*See id.* at 2.)

The government asserts that it revoked the petitioner's OSUP "due to violations of the conditions of release, including his arrests."  (ECF No. 9 at 3.)  But the petitioner was first arrested in 2023, before he was detained in 2024 — that was why the government detained him.  (*See id.* at 2.)  The government was also aware in 2024 that Queens police officers wanted to arrest the petitioner when it released him and granted OSUP.  (*See id.* at 2–3.)  Accordingly, these arrests — which did not result in findings of guilt — do not provide sufficient justification for re-detaining the petitioner on the grounds that he violated the condition that he "not commit any crimes while on the Order of Supervision."  (ECF No. 9-4; ECF No. 9 at 3.)  Nor does the May 23, 2025 arrest for petit larceny, while the petitioner was on supervised release, justify re-detention.  The Queens County District Attorney's Office confirmed that it "dismissed" the arrest "prior to Criminal Court arraignment."  (ECF No. 10-10 at 1.)  In other words, the petitioner was not convicted of anything.  Nevertheless, ICE re-detained him almost a year later, after he had been checking in regularly.  (ECF No. 10 at 6.)  His only opportunity to challenge the revocation of his supervised release was an informal interview conducted the same day he was re-detained.  (ECF No. 9 at 3; ECF No. 10 at 6; ECF No. 9-9 at 2.)

In this circuit, courts assessing the adequacy of the process afforded in the civil immigration context apply the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Velasco Lopez*, 978 F.3d at 851.  Thus, the Court balances (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the [g]overnment's interest, including the function involved and the fiscal

and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Each factor weighs in the petitioner's favor. *See Navarro-Maury v. Hermosillo*, No. 26-CV-333, 2026 WL 1413166, at *4 (W.D. Wash. May 20, 2026) (applying *Mathews* and finding that the revocation of a petitioner's OSUP and re-detention violated procedural due process where "Petitioner (1) was not convicted of any crimes arising from his November 2020 arrest; (2) was only detained by ICE five years after that arrest; and (3) could only challenge the reasons for revocation via an 'informal interview' conducted the day he was re-detained"). Further, the record does not reflect how much time passed before ICE served the petitioner with the Notice of Revocation of Release after he was re-detained. *See Funes*, 810 F. Supp. 3d at 499 (finding procedural due process violation where a petitioner "did not receive notice of the reasons for revoking her OSUP until many hours after she had been detained, by which time she had been separated from her family and counsel, housed in a cell, and put on track for transfer out-of-state the next morning").

According to the record, a deportation officer did an informal interview of the petitioner; the "Alien Informal Interview" form includes a deportation officer's attestation that he "conducted an informal interview of [the petitioner] in order to afford the alien an opportunity to respond to the reasons for revocation of his or her order of supervision stated in the notification letter." (ECF No. 9-9 at 2.) But the record does not include any information about when the officer did the interview, whether the petitioner got the Notice of Revocation of Release before the interview, or whether the deportation officer told the petitioner why his OSUP was being revoked. The form says that "the alien made the following oral response regarding the reasons for revocation," and includes four handwritten points, in Spanish, in the first-person. (*Id.*) In substance, the petitioner said that he had two young children — both American citizens — who

needed his care, that he had paid his taxes every year, that he worked Mondays through Saturdays, and that an immigration judge had determined that he could not go back to his home country. (*Id.*) The form does not include any mention of the petitioner's arrests. (*See id.*) Under these circumstances, the Court cannot conclude that the interview complied with Section 241.4(*l*). *Cf. Zhang*, 814 F. Supp. 3d at 328 (finding that a petitioner "was not given an opportunity to respond to the reasons for revocation as required by 8 C.F.R. § 241.4(*l*)" where the petitioner's informal interview form was "incomplete.").

"The Government has significant discretion to enforce the immigration laws and, indeed, to revoke Petitioner's Order of Supervision . . . [b]ut it must do so consistent with the requirements of its own regulations and the Due Process Clause." *Zhu*, 798 F. Supp. at 415. The government has not done so in this case; thus, the detention is unlawful. "The typical remedy for [unlawful] detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Accordingly, the petitioner is entitled to immediate release.[4]

### III.    Removal to Third Country

As an initial matter, the government argues that "to the extent that Petitioner is entitled to any relief regarding an alleged third-country removal — including without limitation a stay of removal — Petitioner must obtain that relief in *D.V.D.* [*v. DHS*, No. 25-CV-10676 (D. Mass.)], and not in this action." (ECF No. 9 at 9.) The petitioner does not dispute that he is a member of the certified class in *D.V.D.* (*see* ECF No. 10 at 10–12.), which challenged the Department of

---

[4] Because the Court finds that ICE violated the petitioner's procedural due process rights, it does not address the petitioner's additional arguments that it violated his substantive due process rights, the Administrative Procedure Act ("APA"), or the *Accardi* doctrine. *See Ndoye*, 2026 WL 306387, at *10. Further, "the Court need not address whether Petitioner's re-detention violates the *Zadvydas* standard based on the likelihood that Petitioner's removal is not reasonably foreseeable." *Zhu*, 798 F. Supp. 3d at 415 (S.D.N.Y. 2025); *see also Liu v. Genalo et al*, No. 26-CV-372, 2026 WL 1383370, at *2 n.2 (S.D.N.Y. May 14, 2026).

Homeland Security ("DHS") policy of removing noncitizens to third countries, *see generally D.V.D. v. DHS*, No. 25-CV-10676 (D. Mass.), ECF No. 1.  However, "[a]s part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).  In other words, a court is not required to dismiss individual claims that duplicate a class action; rather, the court may "excersi[se] its discretion."  *Id.*

On February 25, 2026, the district court in *D.V.D.* entered final judgment setting aside DHS's third-country removal policy and concluded that DHS must follow certain procedures before removing a class member to a third country.  *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102, 167–68 (D. Mass. 2026).  That judgment was stayed on appeal, which is pending as of this writing.  *See D.V.D., et al v. U.S. Department of Homeland Security, et al.*, No. 26-1212 (1st Cir.).  "[M]any district courts have addressed claims like [the petitioner's] since the *D.V.D.* judgment was entered without evident concern that doing so encroached on the *D.V.D.* court's jurisdiction."  *Dia v. Raycraft*, No. 26-CV-1054, 2026 WL 1476507, at *5 (W.D. Mich. May 27, 2026) (collecting cases).  Moreover, since the judgment in *D.V.D.* is stayed, the court's decision in that case does not prevent the respondents from deporting the petitioner to Mexico or another third country without due process.  *Cf. Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025) ("The Court finds it counterintuitive that non-opt-out class membership, for the purposes of granting a preliminary injunction to prevent removal without due process, could prevent individuals from making their own claims for due process while that injunction is stayed on a class-wide basis.").

In any case, *D.V.D.* will not resolve the petitioner's individual claims.  The *D.V.D.* plaintiffs ask the court to "declare [DHS's] policies unlawful and to set them aside, to enjoin

DHS from continuing to fail to provide meaningful advanced notice in writing and the opportunity to present a fear-based claim to an IJ prior to any deportation to a third country, and to order DHS to return Plaintiff O.C.G. and proposed class members who have been deported without these procedural protections." *D.V.D. v. DHS*, No. 25-CV-10676 (D. Mass.), ECF No. 1 ¶ 6. The petitioner in this case is "asserting his individual claims, based on his individual circumstances, rather than claims for systemic relief." *Escobar v. Chestnut*, No. 25-CV-1801, 2026 WL 622121, at *6 (E.D. Cal. Mar. 5, 2026), *report and recommendation adopted as modified*, No. 25-CV-1801, 2026 WL 1069797 (E.D. Cal. Apr. 20, 2026). And "Petitioner brings claims concerning his ongoing detention and OSUP revocation under the due process clause and the INA that are substantively different than those at issue in *D.V.D.*, which largely focused on what procedural due process protections noncitizens subjected to a third-country removal are entitled to." *Portillo Sosa v. Noem*, No. 26-CV-522, 2026 WL 1298657, at *3 (E.D. Va. May 4, 2026). Accordingly, the Court may consider the petitioner's claims, notwithstanding his membership in the *D.V.D.* class.

"Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause." *Castillo Rivas v. Bondi*, No. C26-0134, 2026 WL 295705, at *5 (W.D. Wash. Feb. 4, 2026); *see also Romero v. Ladwig*, No. 25-CV-1106, 2026 WL 1146824, at *15 (M.D. La. Apr. 21, 2026) ("Both the due process clause and the governing statute 8 U.S.C. § 1231(b) place the burden on the government — regardless of whether the country of deportation is designated during or after the removal hearing — to provide a meaningful opportunity to be heard on asylum and withholding claims."

(citation modified)).[5]  Therefore, "[t]o comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country."  *Castillo Rivas*, 2026 WL 295705, at \*5.  The government also "has an affirmative obligation to make a determination regarding a noncitizen's claim of fear before deporting him," *Aden*, 409 F. Supp. 3d at 101, and "if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge," *Castillo Rivas*, 2026 WL 295705, at \*5.

When ICE revoked the petitioner's OSUP, it did not tell him where it intended to send him; his Notice of Revocation of Release said only that "[y]our case is under review for removal to an alternate country."  (ECF No. 9-9 at 3.)  In its opposition to the petitioner's petition, the government asserts for the first time that it intends to deport him to Mexico, which "has agreed to consider accepting Cuban, Honduran, Haitian, Guatemalan, Nicaraguan, El Salvadorian, and Venezuelan nations with [a] final order of removal on a case-by-case basis."  (ECF No. 9 at 3.)  As an initial matter, it does not appear that Mexico has agreed to take the petitioner; according to the government it has agreed only to consider "on a case-by-case basis" whether to accept noncitizens.  (*Id.*)  Even assuming that an agreement was in place, the petitioner fears that he could "ultimately be deported to Nicaragua," where he would "face the same dangers that led to the grant of withholding [of removal] in [his] immigration case."  (ECF No. 10-1 ¶ 9.)  He also fears that he "could be exploited in Mexico," and that he "would become an easy target for criminal organizations because [he] would be alone, without legal status, and without any

---

[5] "The INA prohibits ICE from removing a noncitizen to any country where their 'life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion.'"  *Castillo Rivas*, 2026 WL 295705, at \*5 (quoting 8 U.S.C. § 1231(b)(3)(A)).

support network in Mexico." (*Id.* ¶ 6.)  There is no evidence in the record that the government

has given the petitioner any opportunity to present his fear-based claim for relief from removal to

Mexico.

Here again, the *Mathews* factors favor the petitioner.  He (1) has a "right to have his

removal withheld from a country where he is more likely than not to be persecuted," (2)

requiring an immigration judge to review his claim that he fears removal to Mexico is a

"significant but minimally burdensome procedural safeguard[]," and (3) while the government

has a "significant interest in the prompt execution of removals," there is also a strong public

interest in ensuring non-citizens are not wrongfully removed to countries where they face harm.

*Sagastizado*, 802 F. Supp. 3d at 1012–13.  Accordingly, "considering the weight of each prong

under *Mathews*, the due process analysis comes out in favor of Petitioner."  *Id.* at 1013; s*ee also*

*A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025).[6]

### CONCLUSION

For these reasons, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is

granted.  Immediately and within 24 hours of this Order, the government is directed to release

the petitioner subject to the conditions of his preexisting Order of Supervision, and to return any

property taken from the petitioner at the time of his re-detention.  The government must certify

compliance with the Court's Order by filing a letter on the docket within 48 hours of this Order.

The Court further orders that the respondents and their officers, agents, employees,

attorneys, and persons acting on their behalf or in concert with them may re-detain the petitioner

---

[6] The Court does not address the petitioner's alternative arguments that the respondents' "punitive third country removal practices" violate substantive due process, or that their "policy or practice of failing to provide noncitizens who have final removal orders with meaningful notice and opportunity to present a fear-based claim prior to deportation to a third country" violates the APA.  (*See* ECF No. 1 ¶¶ 105–114.)

only in accordance with due process, including giving adequate notice of the reasons for revocation of release and a meaningful opportunity to be heard in response to those reasons. Finally, the Court orders that the respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are prohibited from removing the petitioner to a country other than Nicaragua without notice and a meaningful opportunity to be heard in re-opened removal proceedings with a hearing before an immigration judge.

Should the petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within thirty days of this Order.

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      June 17, 2026